UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOYLE WILLIAM PALMER,

    Petitioner,

Case No. 14-cv-11245
Hon. Matthew F. Leitman

v.

JEFFREY WOODS,

    Respondent.

_____/

### OPINION AND ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF #1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Doyle William Palmer ("Petitioner") is a state prisoner confined at the Alger Correctional Facility in Munising, Michigan. On March 26, 2014, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (*See* ECF #1.) In the Petition, Petitioner challenges his state-court convictions of two counts of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), two counts of felony murder, Mich. Comp. Laws § 750.316(1)(b), and one count each of arson of a dwelling house, Mich. Comp. Laws § 750.72, first-degree home invasion, Mich. Comp. Laws § 750.110a, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the

1

commission of a felony, second offense, Mich. Comp. Laws § 750.227b.[1] (*See id.*)

For the reasons that follow, the Petition is **DENIED**.

# I

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The Michigan Court of Appeals described the relevant facts as follows:

> [Petitioner's] murder convictions arise from the shooting and stabbing death of John Mascow and the stabbing death of Dennis Langley. The victims shared a house in Riverview and worked together in a vending machine business that was owned by Langley. Sometime after 10:00 p.m. on February 27, 2008, Mascow was shot and stabbed several times while he was lying in his bed. Langley's burned body was found in an attached garage that had been set on fire. An autopsy established that Langley had been stabbed several times and died before his body was exposed to the fire. Investigators determined that an accelerant was used to start the fire in the garage. There was evidence that some papers were lit on fire in the bedrooms of the house, but extinguished on their own. Langley's van was discovered a couple of blocks from his house and it too had been set on fire. Cigarettes and coins were missing from the van.
>
> [Petitioner] previously assisted in Langley's vending machine business on occasion and had also performed work at Langley's house. When [Petitioner] was interviewed by the police days after the homicides, he

---

[1] The Michigan Court of Appeals vacated two of Petitioner's convictions and sentences for first-degree murder and remanded his case for correction of the judgment of sentence to reflect two convictions of first-degree murder, each supported by alternative theories of first-degree premeditated murder and first-degree felony murder.

> had a large bruise on his forearm, a black eye, and a deep cut on his left hand. Blood found at the scene and on a knife at the scene matched [Petitioner's] DNA. A glove for a left hand was found in the kitchen of Langley's house[.]
>
> [….]
>
> [B]lood inside the glove matched [Petitioner's] DNA, and blood on the outside of the glove matched [Petitioner's], Mascow's, and Langley's DNA.
>
> The police arrested Alicia Hartner, Michael Wellwood, and Phillip Morris, as other suspects in the case, but the charges against them were dismissed after they were excluded as possible donors of the blood found at the scene. [Petitioner] gave several conflicting statements to the police. He initially denied having anything to do with the case or being present at Langley's home, but eventually stated that he was at the house to sell cocaine to Langley, and claimed that he and Langley were surprised by Hartner, Wellwood, and Morris, who actually committed the crimes.

*People v. Palmer*, No. 295309, 2011 WL 3299855, at *2 (Mich. Ct. App. Aug. 2, 2011). Petitioner's conviction was affirmed on appeal. *See id.; lv. den.* 806 N.W.2d 489 (Mich. 2011).

Petitioner filed a post-conviction motion for relief from judgment in the state trial court, which that court denied. *See People v. Palmer,* No. 08-012323-01-FC (Wayne County Cir. Ct. Oct. 5, 2012). The Michigan appellate courts then denied Petitioner leave to appeal that decision . *See People v. Palmer,* No. 147779 (Mich.

Ct. App. Sept. 5, 2013); *lv. den.* 840 N.W.2d 364 (Mich. 2013).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The trial court's admission of inflammatory photographic evidence over Petitioner's objection constituted reversible error.

II. Petitioner was denied due process of law because the jury's guilty verdicts were based upon insufficient evidence.

III. Petitioner was denied his constitutional right to effective assistance of counsel because his trial counsel failed to work with Petitioner to prepare a trial strategy and call a witness (a DNA expert) who could testify on Petitioner's behalf.

IV. Petitioner was denied due process of law because the prosecutor engaged in misconduct by improperly distorting evidence and arguing facts during opening statement that had not been entered as evidence.

V. Petitioner was denied the effective assistance of appellate counsel because his appellate counsel failed to raise certain issues on direct appeal.

VI. Petitioner moves the Court to excuse any procedural default and consider any non-exhausted constitutional claim(s) in order to avoid a fundamental miscarriage of justice

## II

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for

federal habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of "clearly established Federal law" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so

long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III

### A

Petitioner first claims that he was denied his constitutional right to due process when the state trial court allowed the prosecution to admit into evidence graphic photographs of the victims' bodies. Petitioner did not raise this *constitutional* claim on direct appeal. Instead, Petitioner argued that the state trial court committed an error of state law when it declined to exclude the photographs under Michigan Rule of Evidence 403. (*See* Petitioner Br. on Appeal at 28-35, ECF #7-40 at 43-50, Pg. ID 3261-68.) Thus, to the extent Petitioner is now

arguing that the state trial court violated his constitutional rights, he has not previously raised, and therefore has not exhausted, that constitutional claim. *See, e.g.*, *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

Moreover, and in any event, even if Petitioner had exhausted this claim in the state courts below, he would not be entitled to relief. The gravamen of Petitioner's claim is that the state trial court deprived him of a fair trial when it failed to exclude the photographs under the Michigan Rules of Evidence. However, alleged state trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The admission of the photographs here did not render Petitioner's trial fundamentally unfair. As the Michigan Court of Appeals explained, the photographs "depicted the locations and nature of the victims' wounds, and the

7

absence of any defensive wounds, and were probative of the perpetrator's intent." *Palmer,* No. 295309, 2011 WL 3299855, at *2. Based on the probative nature of the photographs, it was not unreasonable for the state appellate court to conclude that "[w]hile the photographs were certainly prejudicial by nature, the trial court did not abuse its discretion in determining that the probative value of the photographs was not *substantially outweighed* by the danger of unfair prejudice." *Id.* (emphasis added). Simply put, Petitioner has failed to show that the admission of the photographs was so unfairly prejudicial as deprive him of due process. Therefore, even if Petitioner had exhausted this claim in state court, he still would not be entitled to habeas relief due to the admission of the photographs of the victims.

**B**

Petitioner next seeks habeas relief on the ground that there was insufficient evidence to establish that he was guilty of the charged offenses. The Court concludes that Petitioner is not entitled to habeas relief on this basis.

On direct appeal, the Michigan Court of Appeals reviewed and rejected Petitioner's claim that there was insufficient evidence to support his conviction:

> The prosecution relied on physical and circumstantial evidence to connect [Petitioner] to this crime. [Petitioner's] DNA was the critical evidence that linked him to the deaths of both victims. Both victims had been

8

> stabbed and blood that was found on a knife at the crime scene and elsewhere in Langley's house matched [Petitioner's] DNA. In addition, a latex glove that had been cut was found at the scene. Blood inside the glove matched [Petitioner's] DNA, and blood on the outside of the glove matched [Petitioner's], Mascow's, and Langley's DNA. It was also undisputed that, after the offense, [Petitioner] was observed with a cut on his left hand in the same area as the cut on the latex glove. The presence of [Petitioner's] DNA on the knife supports an inference that [Petitioner] used the knife during the offense, and [Petitioner's] hand injury, along with the combination of [Petitioner's], Langley's, and Mascow's DNA on the outer portion of the latex glove, and [Petitioner's] DNA on the inner portion of the glove, supports an inference that [Petitioner] was wearing the glove and used the knife to stab both victims, and that the glove was cut and [Petitioner's] hand injured while doing so. This evidence, viewed most favorably to the prosecution, was sufficient to enable a rational jury to find beyond a reasonable doubt that [Petitioner], if not acting alone, aided and abetted the intentional killing of both victims. Although [Petitioner] offered explanations and alternative theories for viewing the evidence, it was up to the jury to weigh the evidence and determine the credibility of the witnesses.

*Palmer*, 2011 WL 3299855, at *4.

The state appellate court's holding was not an unreasonable application of clearly established federal law. Under controlling Supreme Court precedent, when a court reviews the sufficiency of the evidence to support a criminal conviction, it asks itself "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This

9

inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). Instead, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

And a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Here, the Court concludes that the state appellate court did not unreasonably apply *Jackson* when it rejected Petitioner's sufficiency-of-the-evidence claim. Indeed, it was not unreasonable for the state appellate court to conclude that there was substantial evidence that tied Petitioner to the charged crimes. And while

some of that evidence may have been circumstantial, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (internal quotation marks omitted). Moreover, the record contains evidence that Petitioner changed the story he told police numerous times, first alleging that he was not at the house, then claiming that he was at the house, but was running away from the true assailants. Based on this (and other) evidence of Petitioner's guilt, the Michigan Court of Appeals did not unreasonably apply *Jackson* when it rejected Petitioner's sufficiency-of-the-evidence claim. Petitioner's second claim for habeas relief is therefore without merit.

### C

In Petitioner's third and fourth claims for habeas relief, he claims that his state-court trial counsel provided him ineffective assistance of counsel and that the state-court prosecutor committed misconduct at his trial.

Petitioner did not raise either of these claims on direct appeal. Instead, he raised them for the first time in his post-conviction motion for relief from judgment that he filed with the state trial court. He also argued in that motion that his appellate counsel was inadequate for failing to raise these claims on direct appeal.

11

The state trial court held that these claims were procedurally defaulted under Michigan Court Rule 6.508(D)(3). That rule provides that a court may not grant relief to a defendant if his motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice. The trial court clearly and expressly denied Petitioner's claims under this rule:

> As [Petitioner] has failed to overcome the presumption that appellate counsel's decisions constituted sound strategy, he likewise has failed to establish "good cause" for his failure to raise the aforementioned claims in a prior appeal, pursuant to MCR 6.508(D)(3). Moreover, the grounds for relief advanced in [Petitioner's] Motion for Relief from Judgment lack merit, and thus would have likely failed on direct appeal. Appellate counsel was not required to raise frivolous or meritless arguments.

*People v. Palmer,* No. 08-012323-01-FC, at *5 (Wayne County Circuit Court. Oct. 5, 2012) (internal citation omitted). The Michigan Court of Appeals and Michigan Supreme Court then denied Petitioner leave to appeal, holding that Petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See Palmer*, 840 N.W.2d 364 (2013). Thus, the state courts enforced a procedural bar that prohibited Petitioner from pursuing these claims.[2] This state-

---

[2] The Court notes that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

court bar prohibits Petitioner from obtaining relief in this Court unless he can demonstrate "cause" for the procedural default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider his claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).[3]

Petitioner attempts to show such "cause" by arguing that his state-court appellate counsel rendered ineffective assistance of counsel when he (appellate counsel) failed to raise his ineffective assistance of trial counsel and prosecutorial misconduct claims on direct appeal. If Petitioner could show such ineffective assistance of counsel on appeal, that could satisfy Petitioner's requirement to show "cause." *See, e.g.*, *Gravley v. Millis*, 87 F.3d 779, (6th Cir. 1996) ("Attorney error that amounts to ineffective assistance of counsel can constitute [] cause'"). But here, Petitioner has failed to show the required ineffectiveness.

---

judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Where, as here, the this last state court ruling does not expressly state the basis for its decision, the Court then "look[s] to the last reasoned state court opinion to determine the basis for the state court's rejection" of a petitioner's claims. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). In this case, as quoted above, the state trial court expressly held that Petitioner was procedurally barred from pursuing these claims.

[3] Of course, Petitioner could not have procedurally defaulted any ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. However, for the reasons stated in text above, Petitioner is not entitled to habeas relief on this claim.

13

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are generally "left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner first argues that his appellate counsel rendered ineffective assistance by failing to argue on appeal that Petitioner's trial counsel was ineffective when he (trial counsel) failed to retain a DNA expert to testify at

14

Petitioner's trial. But Petitioner has failed to show how a DNA expert would have made any difference. Indeed, Petitioner admits that he was present at the scene of the crime and that his blood was found at the scene. Moreover, Petitioner was found in the days immediately following the murders with a substantial cut on his hand. It is therefore unclear what helpful testimony a DNA expert could have offered. Thus, because Petitioner has failed to show that his trial counsel was ineffective for failing to retain a DNA expert, he has not established that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. *See, e.g., Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[I]f the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("[A]ppellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (quotations and citation omitted)).

Second, Petitioner argues that his appellate counsel should have raised the prosecutor's alleged misconduct on appeal. According to Petitioner, the prosecutor committed misconduct during her opening statement when the prosecutor incorrectly told the jury that Petitioner's hand injury was in the same place as the damage to the bloody glove found at the scene that had Petitioner's blood on it.

15

But the prosecutor corrected this misstatement during her closing argument. Thus, it is undisputed that the jury had all of the relevant and corrected information before they deliberated. Therefore, it was not unreasonable for appellate counsel to choose to omit a prosecutorial misconduct claim on direct appeal.

In sum, for the reasons stated above, and the reasons stated by the Respondent in his response to the Petition (*see* ECF #6), none of the claims that Petitioner says his appellate counsel should have raised were "dead bang winners." *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000). Petitioner has therefore failed to establish (1) that his appellate counsel rendered ineffective assistance during Petitioner's direct appeal and (2) cause for his procedural default of failing to raise these claims on direct review.

Petitioner has also not persuaded the Court that he qualifies for the "actual innocence" exception to the procedural default rule. Under that exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant [habeas relief] even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In order to fall within this exception, a habeas petitioner must "support his allegations of constitutional error with new reliable evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner

has failed to satisfy that burden. Because Petitioner has not presented any new reliable evidence that he is actually innocent of the crimes for which he was convicted, the Court declines to excuse his procedural default under the facts that exist here.[4]

## IV

In his fifth claim for relief, Petitioner argues he was denied the effective assisatance of appellate counsel. But for all of the reasons described above in Section III, Petitioner has failed to establish that his appellate counsel was ineffective. Finally, in his sixth claim for relief, Petitioner asks the Court to excuse any procedural defaults and consider any non-exhausted claims. This does not state a standalone claim for relief, and for all of the reasons stated herein, Petitioner has not persuaded the Court that his procedural defaults should be excused.

## V

For all of the reasons stated above, The Court will deny the Petition. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a

---

[4] Moreover, Petitioner's sufficiency-of-the-evidence claim (his second claim for relief in the Petition) is insufficient to invoke the actual innocence exception to the procedural default rule. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency").

certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this Opinion and Order, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). However, the Court will grant Petitioner leave to appeal *in forma pauperis*, because such an appeal would not be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V

Accordingly, for all of the reasons stated above, **IT IS HEREBY ORDERED** that the Petition (ECF #1) is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **GRANTED.**

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: October 26, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 26, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda<br>
Case Manager<br>
(313) 234-5113